**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:**<br><br>**KONA COAST VENTURE, LTD,** | §<br>§<br>§<br>§<br>§ | <br>**LEAD CASE NO. 26-51866-ALT** |
| **IN RE:**<br><br>**HIDEOUT ON THE HORSESHOE, LLC**<br><br>**DEBTORS.**[1] | §<br>§<br>§<br>§<br>§<br>§ | **SECOND CASE NO. 26-51900-ALT**<br><br>**CHAPTER 11**<br><br>**(Jointly Administered Under 26-51866-ALT)** |

***EMERGENCY* MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO PAY WAGES AND BENEFITS TO THEIR PERSONNEL AND TO SATISFY RELATED OBLIGATIONS**

**Emergency relief has been requested. Relief is requested not later than July 21 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**You may participate in the hearing either in person or by an audio and video connection.**

**Instructions for accessing the virtual courtroom are available at www.txwb.uscourts.gov/sites/txwb/files/Zoom_Video_Hearing_Guide_for_Pa rticipa nts_txwb.pdf. To minimize technical difficulties, parties are encouraged to utilize telephone landlines rather than computer audio where possible. Parties who are merely observing should not appear on camera during the proceedings. Non-Parties may not attend a hearing remotely without prior Court permission.**

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Kona Coast Venture, Ltd. (2553); Hideout on the Horseshoe, LLC (4170).

**TO THE HONORABLE AUBREY L. THOMAS,**
**UNITED STATES BANKRUPTCY JUDGE:**

Kona Coast Venture, Ltd. ("**Kona**") and Hideout on the Horseshoe, LLC, ("**Hideout**") as debtors and debtors-in-possession (collectively, the "**Debtors**"), by and through their proposed counsel, hereby file this motion (the "**Wage Motion**" or "**Motion**") pursuant to sections 105(a), 363, 507(a)(4), and 1107(a) of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors seek the entry of an order on a final basis in substantially the form attached hereto as **Exhibit A** (the "**Order**").

## Introduction

1. By this Motion, the Debtors seek authority to pay their respective workforces in the ordinary course of business and to continue their routine compensation obligations without interruption during these Chapter 11 Cases. Kona operates a live entertainment venue in New Braunfels, Texas, and Hideout operates a cabin and river retreat property on the Guadalupe River. Together, the Debtors employ a combined workforce of full-time and part-time employees and retain independent contractors essential to their continued operations. Kona's most recent biweekly payroll totaled $31,288.94 in gross wages, and Hideout's most recent biweekly payroll totaled $9,857.51 in gross wages. Both Debtors' next ordinary payroll date is July 21, 2026. The relief requested herein is necessary to prevent immediate and irreparable harm to both estates: without authority to pay their employees and contractors on their regular schedules, the Debtors risk losing personnel essential to their continued operations and reorganization efforts. The Debtors respectfully request that the Court grant this Motion on an emergency basis.

## Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105(a), 363, 507(a)(4), and 1107(a) of the Bankruptcy Code.

**Background**

5. On July 7, 2026, Kona filed a voluntary petition for relief in this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Subsequently, on July 13, 2026, Debtor Hideout filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code. The Debtors' bankruptcy cases are collectively referred to as the "Chapter 11 Cases."

6. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

7. As of the date of filing this Motion, no trustee, examiner, or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

8. Kona is a Texas limited partnership d/b/a business as Whitewater Amphitheater, d/b/a Whitewater Music.

9. Hideout is a Texas limited liability company.

10. Kona operates the Whitewater Amphitheater, which has a capacity of 5,600 and hosts both prominent and legendary musical artists in an outdoor, riverfront setting described as intimate and scenic. The venue has been nominated for multiple Academy of Country Music Venue of the Year awards, including Outdoor (2022) and Medium Capacity (2018), reflecting a consistent focus on enhancing the experience for artists and concertgoers.

11. Whitewater Amphitheater's operations include the presentation of a full seasonal lineup of concerts, periodic facility enhancements such as expanded seating and accessibility accommodations, and customer-facing services and policies communicated through its website,

which provides ticketing information, booking, venue policies, employment, production information, visit planning resources, accessibility information, and contact details. A full concert season at Whitewater Amphitheater can contribute as much as $20 million to the local New Braunfels economy.

12. The Hideout owns and operates a 19-cabin property that creates an environment that surpasses the standard fare for the Guadalupe River. All of the cabins overlook the Guadalupe River and/or scenic Hill Country and have direct river access to the Guadalupe River. The Hideout is a short drive to Canyon Lake and just 10 minutes from Downtown Historic Gruene. The Hideout is perfect for vacations, honeymoon getaways, weddings, business outings, family reunions, church gatherings, and more.

13. Prior to the filing of the Chapter 11 bankruptcies, Kona and Hideout were facing a foreclosure of their real property interests, thereby necessitating the filing of the bankruptcies.

14. To enable the Debtors to maintain their operations during these Chapter 11 Cases and minimize disruption to their business operations, the Debtors are seeking relief necessary for an orderly transition into bankruptcy. This Motion seeks to ensure employees of both Debtors are paid without interruption.

## The Debtors' Workforce

### A. Kona Coast Venture, Ltd.

1. Kona maintains a dedicated workforce essential to its business operations. This workforce consists of two primary categories: (i) full-time and part-time employees of Kona (the "**Employees**"), and (ii) individuals that provide critical services to Kona through independent contractor arrangements (the "**Supplemental Workforce**").

**a. Employees.**

2. Kona employs a total of sixty-eight (68) full-time and part-time employees across multiple departments essential to its venue operations. Eight (8) employees serve in full-time roles, holding salaried positions in management and operations, including Kona's General Manager of Venue Operations, Director of Operations and Logistics, Marketing Manager, Talent Buyer, and Ticketing Manager. These individuals are responsible for the day-to-day management of the venue, talent acquisition, ticketing and accounting, marketing, and overall operations — functions without which Kona cannot conduct business. The remaining sixty (60) employees work on a part-time, hourly basis across the Front Gate, Parking, Production, Marketing, and Office departments. These employees staff every event Kona hosts and are the primary point of contact for Kona's customers. Their continued availability and reliability is critical to Kona's ability to operate.

3. Employees are paid biweekly through direct deposit. Kona's most recent pay date was July 7, 2026, covering the pay period from June 21 through July 4, 2026, with gross wages paid of $31,288.94. The next ordinary pay date is July 21, 2026, covering the pay period from July 5 through July 18, 2026. As of the Petition Date, no payments are outstanding.

**b. Supplemental Workforce.**

4. Kona and Hideout each retain Anita Duffin as an independent contractor to perform monthly bank account reconciliation services. Ms. Duffin's work is essential to the financial operations of both Debtors: she ensures that each Debtor's books and bank records are reconciled on a monthly basis, which is a function critical to the accurate reporting of the Debtors' financial positions during this Chapter 11 case. Ms. Duffin is compensated separately by each Debtor: Kona pays Ms. Duffin approximately $1,750 per month depending on the volume of work performed,

and Hideout pays Ms. Duffin $400 per month for bookkeeping services. She is engaged on a 1099 independent contractor basis by both Debtors.

5. Kona's ability to maintain accurate financial records and fulfill its reporting obligations during this Chapter 11 case depends on Ms. Duffin's continued engagement. Any disruption to her services would directly impair Kona's ability to monitor its cash position and comply with its obligations as a debtor-in-possession.

**B. Hideout on the Horseshoe, LLC's Workforce**

6. Hideout maintains a workforce essential to its operations as a cabin and river retreat property. In addition to its part-time hourly employees, Hideout retains independent contractors who provide critical housekeeping, cleaning, and laundry services necessary to maintain the property and serve guests.

7. Hideout employs ten (10) part-time employees, all of whom are compensated on an hourly basis. These employees perform a range of functions including property management, housekeeping, guest services, reservations coordination, and operations support. In addition to their base hourly wages, certain employees have the opportunity to earn commissions for completing additional cleaning work, such as cabin cleaning, on-site laundry, and kitchen and pavilion cleaning. These commissions are tracked by the housekeeping manager on a biweekly basis and submitted with payroll. Commission amounts vary depending on the work performed and are not guaranteed, but have approximated $2,700 per pay period based on recent payroll records. Their continued services are essential to Hideout's ability to serve guests and maintain its property during this Chapter 11 case.

8. Hideout employees are paid biweekly through direct deposit. The most recent pay date was July 7, 2026, with gross wages paid of $9,857.51. The next ordinary pay date is July 21, 2026. As of the Petition Date, no payments to Hideout employees are outstanding.

9. In addition to base hourly wages, certain Hideout employees receive monthly phone allowances totaling approximately $945.00 per month.

**c. Hideout's Supplemental Workforce.**

10. In addition to its employees, Hideout retains two independent contractors who provide cleaning, housekeeping, and laundry services for the property.

11. Hideout retains Theresa Keltner as an independent contractor to provide cleaning services for the Hideout's rental units and common areas. Ms. Keltner's services include cleaning each rental unit following guest checkout, cleaning public restrooms, and handling laundry. Ms. Keltner's compensation is based on the number of units cleaned per engagement, with rates varying by unit, plus the actual cost of laundry and, where applicable, additional fees for particularly difficult cleanups. Hideout pays Ms. Keltner on a weekly basis by check upon receipt of her invoice. Her approximate weekly compensation is $1,000.00, though the actual amount may fluctuate depending on the number of units cleaned, laundry volume, and any additional fees incurred.

12. Hideout also retains Eleuteria Bravo Rivera as an independent contractor to provide laundry services for the property. Ms. Rivera's company collects laundry from the Hideout and returns a corresponding invoice with the laundered items. Hideout pays Ms. Rivera by check upon delivery, with payment provided with the next laundry drop-off. Ms. Rivera's compensation varies based on the volume of laundry processed. Hideout estimates its laundry costs payable to Ms.

Rivera to be approximately $1,250.00 per week, though the actual amount may fluctuate depending on volume.

## IV. Compensation and Benefits Programs

### A. Summary of Total Compensation Obligations.

13. The Debtors' monthly compensation obligations are approximately as follows:

| Kona Coast Venture, Ltd. | | |
|---|---|---|
| **Category** | **Payment Schedule** | **Amount** |
| Full-Time Employees (Salaried) | Biweekly | $21,067.00 |
| Part-Time Employees (Hourly) | Biweekly | $10,221.94 |
| Anita Duffin (Independent Contractor) | Monthly | $1,750.00 |
| **Approximate Monthly Total** | N/A | $64,327.88 |

| Hideout on the Horseshoe, LLC | | |
|---|---|---|
| **Category** | **Payment Schedule** | **Amount** |
| Part-Time Employees (Hourly) | Biweekly | $9,857.51[2] |
| Anita Duffin (Independent Contractor) | Monthly | $400.00 |
| Theresa Keltner (Independent Contractor) | Weekly | Approx. $1,000.00 |
| Eleuteria Bravo Rivera (Independent Contractor) | Weekly | Approx. $1,250.00 |
| **Approximate Monthly Total** | N/A | Approx. $29,115.02 |

All of the compensation obligations that were due and owing as of the Petition Date have been satisfied.

[2] This amount includes the commission earned by some employees completing additional cleaning work. It additionally includes a $150 stipend that Heather Burch receives to answer calls after hours for reservations for Hideout.

14. Neither Kona nor Hideout offers health, dental, vision, or other group insurance benefits to their employees. Accordingly, no insurance premium obligations exist as of the respective Petition Dates.

15. Each of the Debtors maintains worker's compensation coverage covering all of their respective employees for occupational illness and injury in accordance with Texas law, including weekly payments based on regular earnings and medical expenses. This coverage is addressed by separate motion.

16. Neither Kona nor Hideout maintains a 401(k) or other retirement plan for their employees. No retirement contributions are owed as of the respective Petition Dates.

17. Neither Kona nor Hideout maintains a formal paid time off or vacation accrual policy. Employees of both Debtors do not accrue PTO, and no amounts are owed for accrued leave as of the respective Petition Dates.

18. Business Expense and Personal Reimbursements: Certain employees of Kona receive regular reimbursements for documented business and personal expenses in connection with their employment. Specifically: (i) Chesley House receives a monthly reimbursement covering phone ($150.00), health insurance ($548.92), business expenses ($99.00), and mileage reimbursed at the IRS standard business mileage rate as driven; (ii) Alyssa Machac receives a monthly phone reimbursement of $35.00; and (iii) Kacy Sproles receives a health insurance reimbursement of $3,896.88 every six months.[3]

## V. Relief Requested

19. By this Motion, the Debtors respectfully request that the Court enter an order:

[3] Kacy Sproles' most recent semi-annual health insurance reimbursement was paid prior to the Petition Date.

a. **Authorizing payment of prepetition obligations:** Authorizing the Debtors to pay all wages, salaries, and other compensation earned by their respective employees prior to the applicable Petition Date, including all biweekly wages and expense reimbursements due and owing as of the respective Petition Dates;

b. **Confirming ordinary course status:** Confirming that the following regular payments constitute ordinary course transactions under section 363(c)(1) that may continue without further Court approval: (i) all wage and salary payments to Kona's full-time and part-time employees; (ii) all wage payments to Hideout's part-time employees, including applicable cleaning commissions; (iii) all employee expense reimbursements, including phone, health insurance, business expenses, and mileage reimbursements for Kona employees, and phone allowances and availability stipends for Hideout employees; (iv) monthly independent contractor payments to Anita Duffin by both Debtors; (v) weekly independent contractor payments to Theresa Keltner and Eleuteria Bravo Rivera by Hideout; and (vi) all payroll practices, including withholdings, deductions, and payroll taxes;

c. **Directing banks to honor payments:** Authorizing and directing the Debtors' respective banks to receive, process, honor, and pay all checks, electronic transfers, and payroll transfers related to the foregoing, and authorizing the Debtors to issue new post-petition checks or electronic transfers to replace any prepetition payments that may be dishonored or rejected; and

d. **Granting related relief:** Granting such other and further relief as the Court deems just and proper.

## VI. Bases for Relief

### A. The Debtors' Workforces Are Critical to Their Reorganization.

20. The continued loyalty and dedication of the Debtors' respective workforces is paramount to a successful reorganization. Kona operates a live entertainment venue requiring a consistent, skilled, and reliable workforce, while Hideout depends on its employees and contractors to maintain its property and serve guests. Each Debtor's ability to continue its business operations and serve its customers depends entirely on the uninterrupted services of its employees and contractors.

21. If the Debtors' employees do not receive timely payment for services performed prepetition or continued compensation post-petition, it is highly probable that they will seek alternative employment. Many of these individuals rely on their compensation to meet their own financial obligations. Any interruption in wages or compensation would cause undue hardship and severe financial difficulties for these individuals.

22. The Debtors would suffer immediate and irreparable harm from any resulting loss of morale, disruption to operations, and potential exodus of their dedicated personnel, including their respective Supplemental Workforces. Courts routinely recognize the necessity of honoring payment obligations to independent contractors and temporary workers. *See In re Leslie Controls, Inc.*, No. 10-12199 (CSS), 2012 WL 13340548, *1-2 (Bankr. D. Del. Nov. 6, 2012).

23. The services provided by these individuals are the backbone of each Debtor's ability to fulfill its respective business mission. The loss of experienced personnel would significantly jeopardize each Debtor's ability to reorganize and continue its essential operations. Other Courts in this state have observed the continuity and performance of a debtor's work force

is "typically dependent on timely payment of wages and benefits." *In re Tusa-Expo Holdings, Inc.*, No. 08-45057-DML-11, 2008 WL 4857954, at *4 (Bankr. N.D. Tex. Nov. 7, 2008).

**B. The Prepetition Employee Obligations Are Priority Claims.**

24. The requested relief is appropriate under section 507(a)(4) of the Bankruptcy Code. Section 507(a)(4) grants priority status to claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the petition date, up to a statutory cap (currently $17,150 per individual).

25. The Debtors have determined that all prepetition wage and salary obligations qualify for priority under section 507(a)(4). No individual employee of either Debtor is owed more than the statutory cap of $17,150. Accordingly, the Debtors' payment of these obligations will not prejudice general unsecured creditors, as these claims are already entitled to priority payment under any confirmed reorganization plan pursuant to 11 U.S.C. § 1129(a)(9)(B). Granting this relief merely affects the timing of payment.

**C. A Valid Business Justification Exists Under Section 363(b).**

26. To the extent that any payment of the prepetition employee obligations or continuation of programs is deemed to be outside the ordinary course of either Debtor's business, the requested relief is also appropriate under section 363(b) of the Bankruptcy Code. Section 363(b)(1) empowers the Court to authorize a debtor-in-possession to use property of the estate outside the ordinary course of business after notice and a hearing. A debtor must demonstrate a valid business justification to obtain court approval for using assets outside the ordinary course of business. *In re Montgomery Ward Holding Corp*., 242 B.R. 147, 153 (Bankr. D. Del. 1999).

27. Payment of prepetition wages, salaries, and the continuation of expense reimbursement programs provide a compelling business justification, as they are often necessary

to preserve morale and protect the debtors' businesses, thereby enhancing their ability to reorganize. *See In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1985).

**D. Relief is Warranted Under the Doctrine of Necessity.**

28. The relief requested is also authorized under section 105(a) of the Bankruptcy Code, which empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

29. The "necessity of payment" doctrine recognizes the judicial power to authorize a debtor in a reorganization case to pay prepetition claims when such payment is essential to the continued operation of the debtor. *See In re Equalnet Commc'ns Corp.,* 258 B.R. 368, 369-371 (Bankr. S.D. Tex. 2000); *In re Gulf Air, Inc.*, 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989); *In re Lehigh and New England Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981); and *In re Just for Feet, Inc*., 242 B.R. 821, 826 (D. Del. 1999). The rationale for this rule aligns with the paramount goal of Chapter 11: "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

30. The continued services and cooperation of the Debtors' entire workforces are integral and necessary for successful reorganization. The potential harm and economic disadvantage that would result from the Debtors' failure to pay these obligations is grossly disproportionate to the amount of any prepetition claim that may be paid.

31. This Court has repeatedly authorized the payment of prepetition wage and salary obligations in Chapter 11 proceedings. *See e.g.*, *In re Austin Aggregates LLC*, No. 25-10502, Order, Doc. 24 (April 25, 2025); *Premier Datacom, Inc.*, No. 25-10097, Order, Doc. 69 (February 21, 2025); *In re Binder Science LLC*, No. 24-70095, Order, Doc. 38 (August 6, 2024); *In re Diverse Construction Group, LLC*, No. 23-51281, Order, Doc. 23 (October 2, 2023); *In re Activa*

*Resources LLC*, No. 22-50117, Order, Doc. 39 (February 11, 2022); *In re All American Oil & Gas Incorporated, Kern River Holdings Inc., et al*, No. 18-52693, Order, Doc. 221 (January 7, 2019). The Supreme Court has also recognized that such "first-day" wage orders are typically justified by the goal of enabling a successful reorganization and making all creditors, including those with disfavored claims, "better off." *See Czyzewski et al. v. Jevic Holding Corp. et al.*, 580 U.S. 451, 468 (2017) (internal quotation marks and citations omitted) (distinguishing interim wage distributions from final distributions that violate the priority scheme and lack a similar justification).

**E. Payroll Taxes and Employee Withholdings are Not Property of the Estate.**

32. With respect to payroll taxes (including payroll tax deductions and payroll tax payments), the payment of such taxes will not prejudice other creditors of the Debtors' estates. The portion of the payroll taxes withheld from an employee's wages on behalf of the applicable taxing authority is held only in trust by the applicable Debtor and is not property of its estate. *See Begier v. IRS*, 496 U.S. 53, 66-67 (1990).

33. The Debtors' continued remittance of withheld payroll taxes to the appropriate taxing authorities does not constitute a use of estate property requiring Court approval, as these funds are held in trust and never become property of the estates. Nevertheless, out of an abundance of caution, the Debtors seek authorization to continue these withholdings and remittances to ensure no disruption in payroll tax compliance.

**F. This Court Should Grant Authority for Banks to Process Payments.**

34. The Debtors further request that the Court authorize and direct their respective banks to receive, process, honor, and pay any and all checks, electronic fund transfers, and automatic payroll transfers drawn on the Debtors' accounts, to the extent that such checks or

transfers relate to any of the prepetition employee obligations or the continuation of ongoing employee and supplemental workforce payments.

35. The Debtors also seek authority to issue new post-petition checks or effect new electronic fund transfers on account of such claims to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the bankruptcy cases. Courts frequently authorize this relief as a necessary part of an employee wage motion to ensure a seamless transition into bankruptcy. *See In re Leslie Controls, Inc.*, No. 10-12199 (CSS), 2012 WL 13340548, *2 (Bankr. D. Del. Nov. 6, 2012).

**G. Certain Payments Constitute Ordinary Course Transactions.**

36. The Debtors respectfully submit that the following regular payments constitute transactions in the ordinary course of their respective businesses under section 363(c)(1) of the Bankruptcy Code:

a. All Employee Compensation: Biweekly wages for full-time and part-time employees

b. Employee Expense Reimbursements (Phone, Health Insurance, Mileage, and Office Expenses)

c. Independent Contractor Payments — Anita Duffin (approximately $1,750/month by Kona; $400/month by Hideout for bookkeeping); Theresa Keltner (approximately $1,000/week by Hideout for cleaning services); and Eleuteria Bravo Rivera (approximately $1,250/week by Hideout for laundry services)

d. All payroll practices including withholdings, deductions, and business expense reimbursements

37. These payments satisfy both dimensions of the ordinary course test established in *In re Roth American, Inc.*, 975 F.2d 949, 952-53 (3d Cir. 1992). They are standard throughout the live entertainment and hospitality industries (horizontal dimension) and have been made regularly by each Debtor for years (vertical dimension).

38. Courts recognize that ordinary course transactions must be evaluated within the specific industry context. *See id.* Live entertainment venue operators and hospitality property operators each have unique operational requirements and standard practices that reflect the event-driven and guest-service nature of their respective businesses. The Debtors' workforce compensation practices have been consistent and unchanged for years and are consistent with practices throughout their respective industries.

39. To the extent any of these payments are for post-petition services or purposes, they constitute administrative expenses under section 503(b)(1)(A) that the Debtors seek authority to pay in the ordinary course of their respective businesses.

**H. Immediate Relief is Necessary.**

40. The relief requested herein satisfies the standards for immediate relief under Bankruptcy Rules 6003 and 6004. Rule 6003 permits the Court to grant relief within 21 days of the Petition Date where such relief is "necessary to avoid immediate and irreparable harm."

41. The Debtors' next regular payroll date is July 21, 2026. Any delay in authorizing these payments could result in employees of both Debtors failing to receive timely wages, potential mass resignations of key personnel, and a collapse of the Debtors' essential operations that would be impossible to reverse.

42. For these reasons, the Debtors respectfully request waiver of the notice requirements of Rule 6004(a) and the 14-day stay period of Rule 6004(h) to the extent applicable.

**Notice**

43. The Debtor will serve notice of this Motion to: (a) the Office of the United States Trustee for the Western District of Texas; (b) the holders of the twenty (20) largest unsecured claims against the Debtor on an aggregate basis; and (c) those parties requesting notice pursuant

to Bankruptcy Rule 2002. In light of the relief requested, the Debtor submits that no further notice is needed.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court enter an order substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated: July 14, 2026

Respectfully Submitted,

**HUSCH BLACKWELL LLP**

*/s/ Lynn Hamilton Butler*
Lynn Hamilton Butler (SBN 03527350)
Email: lynn.butler@huschblackwell.com
Tara T. LeDay (SBN 24106701)
Email: tara.leday@huschblackwell.com
Jennifer Pollan (SBN 24150828)
Email: jennifer.pollan@huschblackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Main No. (512) 472-5456
Fax No. (512) 479-1101

**ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, KONA COAST VENTURE, LTD. AND HIDEOUT ON THE HORSESHOE, LLC**

**CERTIFICATE OF SERVICE**

This will certify that on July 14, 2026, a true and correct copy of the foregoing pleading has been forwarded via this Court's CM/ECF notification system to the parties registered for such service and will be served on (a) the Office of the United States Trustee for the Western District of Texas; (b) the holders of the twenty (20) largest unsecured claims against the Debtors on an aggregate basis; and (c) those parties requesting notice pursuant to Bankruptcy Rule 2002.

/s/ *Lynn H. Butler*
Lynn H. Butler

| **Parties Requesting Notice – VIA ECF:** | |
|---|---|
| United States Trustee - SA12<br>US Trustee's Office<br>615 E Houston, Suite 533<br>San Antonio, TX 78205 | James W Rose, Jr<br>DOJ-Ust<br>615 E. Houston Street #533<br>San Antonio, TX 78205 |
| Stephen Wayne Lemmon<br>Streusand Landon Ozburn Lemmon LLP<br>1801 S. Mopac Expressway - Suite 320<br>Austin, TX 78746 | Rhonda Bear Mates<br>Streusand Landon Ozburn Lemmon LLP<br>1801 S. Mopac Expressway - Suite 320<br>Austin, TX 78746 |
| The County of Comal, Texas<br>McCreary Veselka Bragg & Allen, PC<br>c/o Julie Anne Parsons<br>PO Box 1269<br>Round Rock, TX 78680-1269 | |
| **Top 20 Unsecured Creditors – VIA REGULAR MAIL:** | |
| American Express<br>PO Box 6031<br>Carol Stream, IL 60197 | American Express<br>PO Box 981535<br>El Paso, TX 79998 |
| Moody National Bank<br>2302 Post Office Street<br>Galveston, TX 77550 | State of Texas<br>c/o Comptroller of Public Accounts<br>111 E. 17th Street<br>Austin, TX 78774-0100 |
| Texas Workforce Commission<br>Bankruptcy Section<br>P.O. Box 149080<br>Austin, TX 78714 | U.S. Department of the Treasury<br>Bureau of the Fiscal Service<br>PO Box 830794<br>Birmingham, AL 35283-0794 |
| U.S. Small Business Administration<br>10737 Gateway West, #300<br>El Paso, TX 79935 | Internal Revenue Service<br>c/o Centralized Insolvency Operation<br>2970 Market St.<br>Mail Stop 5-Q30.133<br>Philadelphia, PA 19104-5016 |
| MAV WTW Holdings, LLC<br>C/O Streusand, Landon, Ozburn & Lemmon,<br>1801 South MoPac Expressway, Suite 320<br>Austin, TX 78746 | |

# EXHIBIT A

**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **LEAD CASE NO. 26-51866-ALT** |
| **KONA COAST VENTURE, LTD,** | § | |
| | § | |
| | § | |
| **IN RE:** | § | **SECOND CASE NO. 26-51900-ALT** |
| | § | |
| **HIDEOUT ON THE HORSESHOE, LLC** | § | **CHAPTER 11** |
| | § | |
| | § | **(Jointly Administered Under** |
| **DEBTORS.**[1] | § | **26-51866-ALT)** |

**ORDER AUTHORIZING THE DEBTOR TO PAY WAGES AND BENEFITS TO ITS PERSONNEL AND TO SATISFY RELATED OBLIGATIONS**

Upon consideration of the Debtors*' Emergency Motion for an Order Authorizing the* Debtors *to Pay Wages and Benefits to* Their *Personnel and to Satisfy Related Obligations* (the

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Kona Coast Venture, Ltd. (2553); Hideout on the Horseshoe, LLC (4170).

"**Wage Motion**")[2]; filed by Kona Coast Venture, Ltd. ("Kona") and Hideout on the Horseshoe, LLC ("Hideout," and together with Kona, the "Debtors"); and the Court having conducted a hearing on the Wage Motion on [•], 2026; and the Court having found that (i) it has jurisdiction over the matters raised in the Wage Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; (v) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; (vi) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and (vii) good and sufficient cause exists for granting the relief requested in the Motion pursuant to 11 U.S.C. §§ 105(a), 363, and 507(a)(4), and Federal Rules of Bankruptcy Procedure 6003 and 6004.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

**A. General Relief.**

1. The Wage Motion is granted on a final basis to the extent provided herein.

2. The Debtors are authorized, but not directed, to pay all prepetition wages, salaries, and compensation obligations owed to their respective employees and independent contractors as of the applicable Petition Date, including all biweekly wages and approved expense reimbursements, provided that no individual payment to an employee exceeds the statutory cap under 11 U.S.C. § 507(a)(4).

**B. Ordinary Course Payments.**

[2] Capitalized terms used in this Order shall have the meanings ascribed to them in the Wage Motion.

3. The Court confirms that the following regular payments constitute transactions in the ordinary course of the Debtors' respective businesses under section 363(c)(1) of the Bankruptcy Code, which may continue without further Court approval:

**Employee Compensation:**

a. biweekly wages to Kona's full-time salaried employees of approximately $21,067.00 per pay period, and biweekly wages to Kona's part-time hourly employees of approximately $10,221.94 per pay period; and

b. biweekly wages to Hideout's part-time hourly employees of approximately $9,857.51 per pay period, including any applicable cleaning commissions.

Expense Reimbursements:

a. monthly reimbursements to Chesley House covering phone ($150.00), health insurance ($548.92), business expenses ($99.00), and mileage at the IRS standard rate as driven;

b. monthly phone reimbursement to Alyssa Machac of $35.00; and

c. semi-annual health insurance reimbursement to Kacy Sproles of $3,896.88, paid in June and December.

**Supplemental Workforce:**

a. monthly payments to Anita Duffin (independent contractor) of approximately $1,750 per month by Kona and $400 per month by Hideout;

b. weekly payments to Theresa Keltner (independent contractor) of approximately $1,000 per week by Hideout, and weekly payments to Eleuteria Bravo Rivera (independent contractor) of approximately $1,250 per week by Hideout; and

**Other Ordinary Course Obligations:**

a. all payroll taxes, withholdings, and deductions required by law;

b. business expense reimbursements at IRS standard rates; and

c. all other ordinary course compensation obligations as described in the Wage Motion.

**C. Payroll Practices and Banking.**

4. The Debtors are authorized to continue all payroll practices and procedures in accordance with their respective prepetition practices, including:

a. processing and remitting payroll tax withholdings and deductions to the appropriate taxing authorities; and

b. processing business expense reimbursements in the ordinary course.

c. maintaining payroll records and documentation in accordance with applicable law; and

5. All banks and financial institutions upon which checks or other payment orders are drawn in payment of the obligations authorized herein are authorized and directed to receive, process, honor, and pay all such checks and payment orders when presented for payment, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

6. The Debtors are authorized to issue new postpetition checks or effect new electronic fund transfers on account of the obligations authorized herein to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected.

**D. Limitations and Reservations.**

7. Nothing in this Order shall be construed to:

a. authorize the payment of any amounts in satisfaction of bonus or severance obligations except as specifically authorized herein;

b. authorize any obligations which are subject to section 503(c) of the Bankruptcy Code except as specifically authorized herein;

c. create or perfect any lien or security interest;

d. constitute an admission as to the validity, priority, or amount of any particular claim;

e. constitute a waiver of the Debtors' rights to dispute any particular claim on any grounds;

f. constitute a promise or requirement to pay any particular claim;

g. imply or constitute an admission that any particular claim is of a type specified or defined in this Order;

h. constitute a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or

i. constitute a waiver of any rights under the Bankruptcy Code or any other applicable law.

8. All persons and entities that receive payments pursuant to this Order shall apply such payments only on account of the obligations authorized herein.

9. The Debtors shall maintain records of all payments made pursuant to this Order, including the date, amount, category of payment, and identity of the payee.

**E. Additional Provisions.**

10. The requirements set forth in Bankruptcy Rules 6003 and 6004(a) are satisfied by the contents of the Wage Motion or are otherwise deemed waived.

11. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

12. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

13. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order

14. Notice of this Order shall be provided to all parties entitled to notice pursuant to Bankruptcy Rule 2002 and the Court's orders in this case.

# # #

*Submitted and Entry Requested By:*

**HUSCH BLACKWELL LLP**
Lynn Hamilton Butler (SBN 03527350)
Email: lynn.butler@huschblackwell.com
Tara T. LeDay (SBN 24106701)
Email: tara.leday@huschblackwell.com
Jennifer Pollan (SBN 24150828)
Email: jennifer.pollan@huschblackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Main No. (512) 472-5456
Fax No. (512) 479-1101

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, KONA COAST VENTURE, LTD. AND HIDEOUT ON THE HORSESHOE, LLC**